Good morning your honors. Morning. I am I represent Mr. Perez and I reserve two minutes for rebuttal. Mr. Perez is eligible for asylum as a matter of law. He was a governmental employee for a state agency in Mexico and he uncovered and investigated large-scale corruption. Furthermore, he was persecuted and the state judicial police, when they persecuted and tortured him, informed him that they were doing so at the directive of his then supervisor Mr. Moreno. In 2005 this court decided in Sagaidac that the status of a government employee suffices to show imputed political opinion and that it's by its very nature a political statement. Counsel, would it be worthwhile to remand this case to the BIA to apply the more recent case of Viduniac? We do not believe it is necessary your honor. Viduniac was decided in 2007. However, it follows closely Sagaidac which was decided in 2007. It had at its disposal for its consideration Sagaidac and it decided not to. And the issue in the initial decision of the board and also the remand was whether or not respondent had been persecuted based upon a political opinion. And in both decisions the board decided that no he had not been persecuted because he had not exposed the corruption. And in its second decision it stated that it was not inclined to deviate from its first conclusion. But now Viduniac has a more refined holding that there doesn't have to be public disclosure necessarily for whistle blowing status to be conferred. So do you think it might be helpful for the BIA to consider that case? Well, I have two points on that. One, in Sagaidac there's actually language. It's the first time that the court enunciated that a whistle blower does not have to expose the corruption. And the second issue is that based on Ventura, the court remands in order to give the board an opportunity to decide in the first instance an issue. And in this case, if the court remands in order to give the board an opportunity to decide whether or not respondent was persecuted based upon his political opinion. I understand. We argue that it is a question of law whether or not Mr. Pettis was persecuted based upon his political opinion. And that the board has decided as a matter of law that he wasn't. And this decision was made in contrast to the board's decision in 2005 stating that a whistle blower did not need to expose the corruption. So in fact, the Board of Immigration Appeals did not follow the law in this circuit. Now, were you the attorney when the prior remand at that time as well? I did not oppose the first remand. But I did oppose the second remand. And I did oppose the second remand because of the language in the board's decision in December of 2006 stating that they were not inclined to deviate from their first conclusion that he wasn't persecuted based upon his political opinion. And we have before us which decision, December 2006? Yes. And it said, our previous decision in the instant case affirmed the immigration judge's conclusion that the respondent did not qualify for asylum under GRAVA because he had not reported the corruption to anyone outside the agency and instead tried to handle the problems internally. We are not inclined to deviate from that conclusion on remand. Correct. And you believe that that is erroneous as a matter of law? Oh, absolutely. Absolutely. And that is because? Because respondent, because mischief that is suffered retaliation based upon his uncovering and investigation of government corruption. And secondly, it's not only that an individual finds corruption, but it's that that corruption not be aberrational or an anomaly. And in this case, the respondent in his decision stated that corruption in graft is endemic in the Mexican government. And therefore, Mr. Bettis' uncovering and investigation of corruption in and of itself was a political statement. Without any reporting. So in your view as a matter of law, we should hold that if an individual uncovers corruption, whether or not he or she responds to it, if the corrupt agency persecutes him, that's enough for us. Exactly. He did report this within the agency, didn't he? He did report it. He reported it on three separate occasions to his first supervisor, to his second supervisor, Mrs. Martinez. The first supervisor said don't worry about it. A new government is coming in. A new supervisor is coming in. The second supervisor, Mrs. Martinez, was very concerned about it and in fact had him change his duties. He paid wages to the employees of this agency. So he would go and pay the wages. And when he did that, he was beaten on several occasions. And he was told he was not supposed to be investigating and uncovering the corruption. So there's no dispute as to the facts. Undisputed facts. It's a question of law whether or not he was persecuted based upon his political opinion for being a whistleblower. So when the board said the respondent did not attempt to publicize the corruption he discovered within his agency, nor did he disclose to the authorities investigating the fire that the warehouse contained incriminating documents, we conclude therefore that the respondent failed to establish that the harm he suffered in the past constituted persecution on account of his political opinion. And you say that is directly contrary to Sagaidak, which issued in 2005, and this is a board decision from December of 2006. So obviously the board chose not to consider Sagaidak. Thank you. Your Honor, may it please the Court, my name is Justin Markell, and I represent the Attorney General. This case is a very fact-dependent case, and it's really important not to conflate the different incidents of harm that the Petitioner suffered. Well, is there any dispute about the facts? Yes, ma'am, in regard to how those facts relate to the harm. This is a factual determination, whether or not the harm was on account of an imputed or actual political opinion. That has been treated. But that's not a factual dispute. That's a legal issue. It's a question of law and fact. In this case, it's a question of law applied to fact, and this Court has routinely held that it treats this as a question of fact. Well, the passage that I just read, which said that he didn't attempt to publicize in order to disclose to the authorities, we therefore conclude that he failed to establish that the harm he suffered was on account of political opinion. That's not a factual determination. That's a legal conclusion, which your opponent says is contrary to our law. In Naguna, Honorable Hug wrote the decision in that case, and it points out the standard of review for whether or not an applicant has established eligibility for asylum, which is essentially the determination we're talking about here, whether or not the harm was on account of a political opinion, is review for substantial evidence. Now, that's the substantial evidence standard, and it's the standard this Court provides for factual determinations. And in this case, what's really important is that the first incident that he alleges that he discovered two sets of irregularities. First, this was when he was working in the purchasing department, and when he discovered these, he reported them to his first supervisor, and as opposing counsel noted, at one point in time, petitioner states that this person told him to just be quiet about it because a new administration is coming in and he can tell your new supervisor about it. At a different point in time, he states that this supervisor said that, and this is at 369 of the record, he suggested that all the records be brought current, since he, too, is new in the position, and this was his best approach to this dilemma. So now, counsel, there was no adverse credibility determination. No, there's not. So there's no ‑‑ it doesn't get us anywhere to quibble about the facts, because we have to take the facts as he relayed them because the I.J. accepted those facts and the B.I.A. accepted his testimony. So going from there, accepting his testimony, why isn't ‑‑ You're right. So we don't dispute the facts as they are, but his opinion about why people heard him is not a fact. Now, this Court treats the determination of whether or not the people heard him on account ‑‑ But what you assert was the reason why he was attacked. That's a good question, Your Honor. I'll go through each occasion. So the first occasion, he reported the irregularities to his supervisor. His supervisor then told him that he had to, in order to correct this irregularity, deliver paychecks to the greenhouses and deliver them to each individual at the greenhouse rather than the supervisors at the greenhouse. While he was driving to do this, he was harassed by unidentified individuals. This was not the occasion he was harassed by the judicial police. That was only a reference to his interactions with Mr. Moreno. Weren't they police? He didn't identify them in this incident, Your Honor. In this incident, he just said unidentified individuals stopped him, and he said that he received threats and he was attacked five times. Now, the record does not compel the conclusion that these attacks ‑‑ But let me follow that up a little bit. The threats were to do what if he did what? That's a good point, Your Honor. It's unclear whether or not the individuals that attacked him while driving to these greenhouses even knew that he discovered the irregularities or knew anything about the corruption that he says he discovered. They were, as far as we can tell from the record, or reasonably could be assumed from the record, they were attacking him because he was fulfilling his boss's order to deliver the paychecks. What they told him when he went to deliver the paychecks was, don't deliver the paychecks to the individuals. You need to deliver these paychecks to the bosses of the greenhouses, not to the individuals. Where is there a finding with respect to that? That there was some other reason for the persecution? Well, I mean, the board ultimately held that it wasn't on account of a political opinion. But on the basis that he did not report the corruption, the board didn't say that he failed to prove that it was because of his activities. The board said he didn't report it to an outside agency. He tried to handle it himself. So we have to review the reason that the board gave. Yes, Your Honor. But I think the board in that point is referencing the judicial police instance. Now, in that instance, he was harmed because Mr. Moreno asked him to cooperate in his corrupt practices. At that point in time, the petitioner didn't discover any type of irregularities. Rather, it's more like a DeSere instance, when petitioners simply decided not to cooperate with this corrupt employer. And then when he failed to cooperate with this corrupt employer, he was harmed by the judicial police. Now, unlike DeSere, there wasn't systematic corruption in this case. His supervisor, Ms. Martinez, tells him that people have been arrested as a result of his earlier discoveries. He's been promoted twice as a result of his earlier discoveries. So there's not, unlike a lot of the cases that we've cited in this particular case, the organization from which he worked for was actually supporting him along the way, except for this one individual, Mr. Moreno. And that one individual was an aberrational incidence of corruption. At least the record does not compel otherwise. So the last instance, it also – Wouldn't there be a whistleblowing situation if you had a corrupt officer, say Mr. Moreno, doing things, and he was resisting that, and as a result, he got beat up? Yes, Your Honor. And like I said, the only time this Court has found that to be the case was in the DeSere. And that was the Haitian case involving the Tonton Macoutes. And in that case, this Court went to great lengths to describe the fact that at that time in Haiti, it was a kleptocracy. So by merely not – by not cooperating with the extortion efforts by the Tonton Macoutes, it was implicitly a political statement, because at that time, under this kleptocracy, officials in Haiti had to extort individuals in order to get any type of pay. And this Court went to great lengths talking about how that goes back to the Duvalier regime and how it strengthened the regime. So by not cooperating, it was a larger political statement. That's not the case here. When he actually did report to the agency, people were arrested and he was promoted. And he never reported the Moreno incident to anybody. And also, it's unclear – it's also very interesting that after the first set of facts, after he was delivering the checks to the greenhouses, he was promoted twice. There's no evidence to indicate the individuals that were involved in that first instance ever harmed him again, ever came after him again. He then meets Mr. Moreno. Mr. Moreno asks him to participate in his corrupt activities. He refuses. He then gets attacked a number of times by the judicial police. And then following this, he then – he eventually gets to retire – or not retire, resign. And then he moves on. And then there's a third separate incident. And there's no evidence to indicate that the individuals that were involved with the fire were the same individuals that were involved with the judicial police or the people involved with the greenhouses. Now, Petitioner alleges that he received threats as late as 1990, 1991. This is after the fire, after Mr. Moreno, and after the greenhouse incidents. However, he doesn't ever indicate who these individuals were or whether or not he knew who these individuals were. All he says is that they told him that they knew that he knew information. Now, from that evidence, the record does not compel that these were the same individuals from before or anything of the sort. So what portion of the board's – I don't see any of that in the board's decision. Well, the board didn't say – The only thing I see is the statement that – as to the reason that he failed to prove it was that he didn't – he didn't publicly go outside. So therefore, it wasn't political opinion. And you said you don't have to do that if you work for the government. The question, Your Honor, before the Court is whether or not the record compels contrary conclusion. And these facts that I point out indicate that the record does not compel a contrary conclusion to the board. But you're arguing a different case than the board decided. That's the problem I have with your argument. You're arguing things that the board never articulated in its decision. Your Honor, I understand the board did not explicitly cite to – We have to decide the case on the basis of what the board decided. But, Your Honor, the board – If we think there's something else, we have to send it back and have the board decide that. The board's decision, I believe, is broad enough to take into account that it – The whole distinction between the board's decision and the dissent was that it was not reported to the public or to some other authority. That's the whole difference between the two. The dissent says the board has to do that. Your Honor, the dissent also included misapprehension of fact. Board member Juan Asuna noted that Petitioner was actually a member of a political party, and therefore that played a part of his determination. And, in fact, Petitioner admitted that he was not ever a member of a political party and that even though he received pressure to join the political organization, he was able to resist that pressure. If Your Honor – I don't see that either. Okay. I don't have the board's decision with me at the podium, but I can get to it in sight. No, that's all right. We can read it. The dissenting opinion is very short. All Juan Asuna does is says that he was a member of the PRI and then follows up by stating that – His refusal to acquiesce to his agency's general acceptance of fraud and corruption was the impetus for the threats and attacks against him, and that – Yes, finally. Okay. What do you need? Finally, the Respondent was abrogated against his wishes to join the party. Yeah. Okay. Your Honor, if you have no further questions, I'll rest on the brief. Thank you. Okay. Thank you. That's what you're referring to, that statement.   Thank you. Your Honor, as we would argue that the facts in this case are undisputed and that the board applied an incorrect legal standard to determine whether or not Mr. Pettis was persecuted based upon his political opinion. This Court has the authority to correct the board's error and to find that Mr. Pettis was, in fact, persecuted based on his political opinion, and we request the board revoke that statement. First, the board's decision, and remand the matter to the agency solely for security checks. Let me ask you, do you agree with opposing counsel that our standard of review is substantial evidence? Yes, I do agree with that. All right. Thank you. Okay. The case just argued is submitted for decision.
judges: Hug, Schroeder, Rawlinson